UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD M. HAMPTON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>AARON COX T.C. Director, )<br>)<br>Defendant. ) | Case No. 1:16-cv-00202-TWP-DKL |

**Entry Discussing Motion for Summary Judgment**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Aaron Cox. ("Cox"). Plaintiff Edward Hampton ("Hampton"), a former inmate of the Indiana Department of Correction ("IDOC"), brings this action pursuant to 42 U.S.C. 1983 alleging that Cox violated his First Amendment rights by requiring him to choose between remaining in the Therapeutic Community Program ("TC Program") in violation of his sincerely held religious beliefs or leaving the TC Program and facing punishment. Cox moves for summary judgment arguing that Hampton failed to exhaust his available administrative remedies before filing this lawsuit. Hampton responded to the summary judgment motion and Cox replied. Cox was then directed to supplement his Motion. He has done so and the time for Hampton to respond to the supplement has passed. For the following reasons, Cox's motion for summary judgment [Dkt. 40] is **granted**.

**I. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.,* 242 F.3d 713, 723 (7th Cir. 2001).

## II. Undisputed Facts

At all times relevant to the claims in his complaint, Hampton was incarcerated within the IDOC at the Correctional Industrial Facility ("CIF").

A. *The Grievance Policy*

As an inmate incarcerated within the IDOC, the Offender Grievance Process has been available to Hampton at CIF. The purpose of the Offender Grievance Process is to provide administrative means by which inmates may resolve concerns and complaints related to their conditions of confinement. The following remedies are not available through the Offender Grievance Process: (1) a remedy available through the Classification Division of the IDOC; (2) a remedy for an error allegedly occurring during a disciplinary proceeding; (3) a remedy to a situation or event that is outside the authority of the IDOC; and (4) staff discipline, job reassignment, and/or training. In addition, classification or disciplinary actions or decisions are

not grievable. All inmates are made aware of the Offender Grievance Process during orientation and are provided a copy of the Department's Offender Orientation Handbook which includes a section on the grievance process.

The Grievance Process consists of three stages: (i) an informal attempt to solve a problem or address a concern; (ii) submission of a written form outlining the problem or concern and other supporting information, and the response to that submission; and (iii) a written appeal of the response to a higher authority and the response to that appeal.

Once an inmate files a grievance, the Offender Grievance Specialist reviews it and either accepts it and log it, or rejects it. Grievances concerning classification matters and disciplinary proceedings may be rejected and returned to the inmate. If a grievance is rejected and returned to an inmate, the inmate must make the necessary revisions to the grievance form and return the revised form to the Grievance Specialist within five working days from the date that it is returned to the inmate.

B. *Classification Appeal Process*

Requests for reclassification may be initiated by the inmate and include education, work, and program assignments. The inmate must utilize "State Form 3412, CLASSIFICATION HEARING REPORT" in requesting reclassification. The Classification Committee/Unit Team Committee makes a recommendation regarding the request, and the Supervisor of Classification renders a decision concerning the request. The offender may appeal the decision to the Superintendent, and the Superintendent's decision is final.

The appeal process for classification decisions is set forth in Section IV of the Adult Offender Classification Manual. After the inmate receives a classification decision from the Supervisor of Classification, he may file an appeal. If the inmate decides to appeal, he must: (1)

submit a written appeal within ten working days from the date the he received the classification decision; (2) submit the appeal on the State Form 9260, CLASSIFICATION APPEAL; (3) attach relevant documents to the appeal form as deemed necessary; and (4) submit the appeal form and all other documents to the Superintendent. The Superintendent will review the appeal and render a decision on State Form 9260. The Superintendent is the final administrative review for intra-facility classification decisions.

      C. *Background and Hampton's Grievance History*

In November 2015 Hampton signed paperwork agreeing to participate in the TC Program. Sometime thereafter, Hampton discovered that participation in the program would require him to view materials that glorified alcohol and sexual fornication. Because viewing these types of materials is prohibited by his Muslim faith, Hampton attempted to withdraw from the program. However, he was told by Cox that he would be punished if he signed out of the TC Program.

Hampton filed one grievance related to the claims in his complaint. On January 7, 2016, Hampton submitted a formal grievance complaining that Cox told him he would receive penalties if he signed out of the TC Program. Hampton explained that he could not participate in the TC Program due to his Muslim beliefs and did not think he should be penalized for signing out of the program. For relief, Hampton requested to be removed from the program without any penalties or disciplinary sanctions and to be moved to a faith-based program located in C-Corm. [Dkt. 42-9]. Grievance Specialist Robert Stafford rejected the grievance because the relief Hampton was seeking could not be offered through the Offender Grievance process. Specifically, Stafford wrote the following on the form and returned it unprocessed:

> Improper Relief…Sir by policy the relief you are seeking cannot be offered by the Offender Grievance policy. Each has a separate appeal process and this (sic) the recourse you will need to take.

Dkt. 42-9. Hampton did not re-file his grievance or appeal Stafford's rejection of his grievance. Because Hampton sought relief related to disciplinary actions and the classification process, the relief he sought could not be offered through the Offender Grievance Process, but it could be offered through the Classification Department. On January 10, 2016, Hampton submitted a Classification Appeal asking to be removed from the TC program without consequence. That appeal was denied on February 4, 2016.

### III. Discussion

Cox argues that because he did not complete the Grievance Process, Hampton failed to exhaust his available administrative remedies as required by the PLRA before filing this lawsuit. Hampton responds that he did exhaust his available administrative remedies by filing a classification appeal after his grievance was rejected.

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

The material facts here are undisputed. Hampton filed a grievance related to his removal from the TC Program and that grievance was rejected because he requested relief that was not available. Hampton then proceeded to submit a Classification Appeal on the same issue. The Classification Appeal process is an administrative process which possibly could provide Hampton with the relief he sought.

Cox argues that Hampton was required to exhaust the Offender Grievance Process on the allegations at issue in this case even if that process could not provide him the relief he wanted. It is undoubtedly true that an inmate must exhaust his administrative remedies before filing suit even if he cannot get the relief he wants through the Offender Grievance Process. *Booth v. Churner*, 532 U.S. 731 (2001). But as Cox points out, the Offender Grievance Process is not applicable to a claim, like Hampton's, which involves a classification decision. The undisputed facts thus show that Hampton did utilize his administrative remedies when he filed a classification appeal and received a response. The Classification Appeal Process was the more appropriate administrative process for Hampton to pursue to obtain the relief he sought – removal from a prison program without consequences. Stated another way, the Classification Appeal Process was an administrative process that was available to Hampton to raise the issues he raises in this case. Cox submits no reasonable argument to explain why the PLRA would require Hampton to pursue the Offender Grievance Process – an administrative process that would not avail him of the relief he wanted – when an administrative process through which he might receive the requested relief was available.

Cox makes a further, more compelling argument, however. It is undisputed that Hampton submitted his classification appeal on January 10, 2016, and received a response on February 4, 2016. But he filed the instant lawsuit on January 25, 2016, before the Classification Appeal

Process was complete. The PLRA requires that a prisoner exhaust his available administrative remedies *before* filing suit and the undisputed facts show that Hampton did not complete the classification appeal process before he filed this case. *See Jones v. Bock*, 549 U.S. 199, 202 (2007) ("[T]he PLRA mandates early judicial screening of prisoner complaints and requires prisoners to exhaust prison grievance procedures *before* filing suit.") (emphasis added); *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) ("Section 1997e(a) says that exhaustion must precede litigation."); *Perez v. Wisc. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999) (holding "that a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed"). Hampton admits that he filed this lawsuit before he received the decision on his Classification Appeal, but argues that he was still entitled to bring suit because he had been told that his Classification Appeal would be denied. But this statement is inconsistent with his statement in his Complaint that "Plaintiff has yet to receive any response." Dkt. 1 at 8. A reasonable reading of this statement is that Hampton had not received the results of his Classification Appeal before he filed this lawsuit. This is thus insufficient to show that Hampton exhausted his available administrative remedies before filing this lawsuit.

In sum, Cox has shown that Hampton did not receive a response to his Classification Appeal before he filed this lawsuit. Cox has therefore shown that Hampton did not exhaust his available administrative remedies. Hampton has failed to rebut this showing. Cox is therefore entitled to summary judgment on Hampton's claims.

### Conclusion

For the foregoing reasons, Cox's motion for summary judgment [Dkt. 40] is **GRANTED**. Judgment dismissing this action without prejudice shall now issue.

**SO ORDERED.**

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Date: 3/14/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

EDWARD M. HAMPTON
417 S. Calhoun St.
Fort Wayne, IN 46802

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com

William Hackl Brainard
INDIANA ATTORNEY GENERAL
william.brainard@atg.in.gov

David A. Arthur
OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov